**Sharon S. WILLIAMS, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

Civ. A. No. 87–3155.

United States District Court, District of Columbia.

July 31, 1989.

---

H. Vincent McKnight, Jr., Ashcraft & Gerel, Washington, D.C., for plaintiff.

Annette Samerson and T. Michael Kerrine, Nat. R.R. Passenger Corp., Washington, D.C., for defendant.

OPINION AND ORDER

REVERCOMB, District Judge.

This is a suit alleging racial discrimination and retaliation in violation of 42 U.S.C.

§ 1981. Oral argument was heard on April 4, 1989, on the defendant's motion for summary judgment. While the motion was under advisement, the Supreme Court handed down *Patterson v. McLean Credit Union,* — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which reshaped the proper judicial interpretation of § 1981. Both the defendant and the plaintiff have filed supplements to their pleadings concerning the effect of *Patterson* on this case and questions left to be decided by the lower courts.[1] In this Opinion and Order, the Court grants the defendant's motion for summary judgment.

### Section 1981 and Patterson

Enacted in its original form as part of the Civil Rights Act of 1866, ch. 31, 14 Stat. 27, the current § 1981 states that all persons in the United States "shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." Rev.Stat. § 1977 (codified at 42 U.S.C. § 1981).

In *Patterson,* the Supreme Court held that § 1981 is not a right of action to sue for *all* forms of racial discrimination in the employment context. Noting that the key phrase of the provision concerns the right "to make and enforce contracts," the Court held that

> the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract

obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

109 S.Ct. at 2373. Moreover, the Court added that

> [i]interpreting § 1981 to cover postformation conduct unrelated to an employee's right to enforce her contract, such as incidents relating to the conditions of employment, is not only inconsistent with that statute's limitation to the making and enforcement of contracts, but would also undermine the detailed and well-crafted procedures for conciliation and resolution of Title VII claims.

*Id.* at 2374. Finally, the Court also held that the "right to enforce contracts does not ... extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.* at 2373.

Using this interpretation, the Court in *Patterson* concluded that the plaintiff's claim for racial harassment was not actionable under § 1981. *Id.* In addition, the Court ruled that "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id.* at 2377.

### Applying Patterson

In the instant case, most of the claims of the plaintiff—who was a Manager II of mail baggage and express when the suit was filed—revolved around the allegation that "she is treated differently from the other managers" on account of her race. Amended Complaint ¶¶ 5, 7. She claimed that she was the only manager reporting to another manager, that she was the only manager without an office, that she often

---

1. The parties have not raised the issue whether the Court could decide not to apply *Patterson* to this case. A United States District Court in Wisconsin, relying on the test for retroactivity stated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), has already refused to apply *Patterson* retroactively to a case in which a jury verdict had been delivered, but judgment had not been entered, before *Patterson* was handed down. *See Gillespie v. First Interstate Bank of Wisconsin Southeast,* 717 F.Supp. 649, 651 n. 2 (E.D. Wis.1989). Applying the *Chevron* factors, the Court in the instant case—which has not gone to trial—finds no special equitable reasons to depart from the general rule in favor of applying new judicial decisions to pending cases.

was excluded from meetings, and that she was given raises that resulted in her being paid at a level too low for her position. Amended Complaint ¶¶ 5, 6, 8. Applying *Patterson,* the Court concludes that none of these claims are actionable under § 1981. First, the claims involving conditions of employment were specifically excluded from § 1981's purview by *Patterson,* 109 S.Ct. at 2374. Second, the claim concerning pay—even if it is considered a claim about "promotion"—clearly does not meet the requirement that promotion claims under § 1981 involve the "opportunity for a new and distinct relation between the employee and the employer." *Patterson,* 109 S.Ct. at 2377. Although the Supreme Court did not clarify exactly what is meant by a "new and distinct relation," the Court did state that, in making the determination, "a lower court should give a fair and natural reading to the statutory phrase 'the same right ... to make ... contracts,' and should not strain in an undue manner the language of § 1981." *Id.* This Court concludes that the concept of a "new and distinct relation" certainly does not include a situation in which the employment relationship would not be altered in any way except for a change in pay. Higher pay is a part of nearly all promotions and by itself can hardly make a promotion a "new and distinct relation."

In addition, the plaintiff claims that after she filed this suit her supervisor downgraded her position from "Manager" to "Chief" in retaliation for her bringing the suit, in violation of § 1981. The plaintiff appears to have two theories about how this downgrading could be actionable under § 1981 after *Patterson.*

First, the plaintiff alleges that because the new position involved considerably dif-

ferent duties, the defendant's action both "resulted in the formation of a new contract" and constituted a "refusal to enter the new contract." Plaintiff's Supp. Memo. at 9. If the plaintiff is arguing that the defendant breached an employment contract with the plaintiff or improperly altered the terms of the contract, the Court notes again that *Patterson* made clear that § 1981's right to make contracts does not extend to

> conduct by an employer after the contract relation has been established, including breach of the terms of the contract.... Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law or Title VII.

109 S.Ct. at 2373. This language and rationale leads the Court in the instant case to conclude that the plaintiff's retaliation claim is not actionable under the right to "make contracts" aspect of § 1981. Finally, this Court also concludes that the defendant's action can in no way be characterized as a "refusal" to enter a "new" contract, considering that there was no "new" contract at issue that could be refused.[2]

Second, the Court disagrees with the plaintiff that her retaliation claim is actionable under the right to "enforce contracts" aspect of § 1981. In *Patterson,* the Supreme Court ruled that racial discrimination violates this aspect of § 1981 when it "infects the legal process in ways that prevent one from enforcing contract rights." 109 S.Ct. at 2373. The Court accepts the notion that retaliation against a person for

---

**2.** The Court also notes that the plaintiff did not allege that the downgrading of her position was the result of racial discrimination *per se;* rather, the claim was that the downgrading was in retaliation for the plaintiff's other claims, which involved racial discrimination. The fact that this claim is not one that *per se* alleges racially discriminatory treatment moves it further away from the ambit of § 1981 as narrowly defined in *Patterson.* This is true despite the fact that Title VII provides a cause of action for both discrimination and retaliation, and despite the

fact that courts, drawing on Title VII, had interpreted § 1981 before *Patterson* as giving rise to a cause of action for retaliation claims. *See, e.g., Pinkard v. Pullman–Standard,* 678 F.2d 1211, 1229 n. 15 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). The right to sue for improper treatment does not necessarily include the right to sue for retaliation, especially when the statute granting the initial right is a narrow and precise one, and when another statute explicitly grants the right to sue for retaliation.

bringing racial discrimination claims may in some cases constitute an actionable impediment of contract rights under § 1981, but concludes that the retaliation claim in the instant case does not involve an allegation of the impediment of contract rights.

The plaintiff alleged that the defendant has tried to impede her efforts to pursue her remedies for racial discrimination in working conditions and level of pay; the plaintiff did *not* allege that the defendant tried to impede the plaintiff from enforcing any contract rights, as defined in *Patterson.* Indeed, once the Court has concluded that the claims of discrimination in working conditions and pay do not involve contract rights as defined in *Patterson,* it must follow that the claim of retaliation against the plaintiff for pursuing these other claims *also* is not a claim that involves contract rights.

Finally, although the plaintiff's complaint states that the defendant "owes a common law or statutory duty to refrain from discriminating against plaintiff on the basis of her race," Amended Complaint ¶ 7, the Court knows of and has been informed of no such "common law" cause of action.

Accordingly, pursuant to *Patterson,* the Court concludes that it is appropriate to grant the defendant's motion for summary judgment—without reaching the merits of the claims of discrimination and retaliation—because the plaintiff's claims are not actionable under § 1981. It is

ORDERED that the defendant's motion for summary judgment is GRANTED.