Arthur MILLER, Plaintiff,

v.

SWISSRE HOLDING, INC., Defendant.

No. 87 Civ. 6766 (KC).

United States District Court,
S.D. New York.

Feb. 26, 1990.

BLS Legal Services Corp., Federal Litigation Program, Brooklyn, N.Y., Kathleen A. Sullivan, Ada Clapp and Jonathan Willmott, Legal Interns, New York City, for plaintiff.

Adam Seiden, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

Plaintiff Arthur Miller, a black man, brings this action pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.* (Title VII). Plaintiff alleges that he was discriminated against on the basis of race while he worked at the defendant SwissRe Holding (North American) Inc. ("SwissRe"), namely

that he was harassed and that they failed to promote him. He also claims that he was terminated in retaliation for filing a complaint with the EEOC. SwissRe has moved for partial summary judgment on the section 1981 claim, in light of the recent Supreme Court decision of *Patterson v. McLean Credit Union*, — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Plaintiff has cross-moved pursuant to Federal Rule of Civil Procedure 39(b) for a jury trial of his claims arising under section 1981.[1]

## I. FACTUAL BACKGROUND

Neither party has submitted the requisite statements pursuant to Civil Rule 3(g) of the United States District Court for the Southern and Eastern Districts (hereinafter "Local Rules"). Although Local Rule 3(g) provides that the "[f]ailure to submit such a statement constitutes grounds for denial of the motion," we decline to deny the defendant's summary judgment motion on that ground. Accordingly, we have compiled from all of the documents submitted in support of and in opposition to the pending motions the following statement of relevant facts. Where the allegations are in dispute, we have so noted.

Miller was employed by SwissRe from June 1982 until March 1987. He began working as a computer aide, a position which he held until April 1985, when he was then promoted to a Computer Aide Senior. In September 1985, Miller was promoted to Production Coordinator in the Production Control Department (the "Department"), the position he last held with the company. Miller alleges that in October 1985, he was discriminatorily passed over for promotion to the position of Supervisor of Production Control in favor of a white co-worker with less seniority in the company and no experience in the Department. The position of Supervisor, but not

that of Production Coordinator, was classified as "exempt" by SwissRe, which meant that it was a managerial-level position with compensation by salary only, rather than by overtime pay for hours worked in excess of forty per week which the non-exempt production coordinators received. In addition, exempt employees received more liberal benefits and vacation time than non-exempt employees and an exempt employee's performance was evaluated differently than that of non-exempt employee.

Miller further alleges he was later subject to harassment and discriminatory treatment by the individual promoted to supervisor. In December 1986, Miller underwent eye surgery and took a disability leave from SwissRe. He was expected back from the leave on February 2, 1987. The facts are in dispute as to whether plaintiff validly extended his leave as plaintiff claims or whether he abandoned his job as defendant claims. In late February 1987, Miller contacted the EEOC about the alleged employment discrimination he encountered at SwissRe. On or around March 18, 1987, plaintiff received a telegram from SwissRe purporting to accept his resignation from his post on the ground that he had abandoned it. Plaintiff claims that, by this telegram, he was terminated in retaliation for filing his complaint with the EEOC. After the EEOC dismissed his complaint, plaintiff filed suit *pro se* in this Court.

With regard to the pending motions, we will first address the issue of whether, after *Patterson*, any of the plaintiff's section 1981 claims survive. Since we conclude for the reasons set forth immediately below that part of the plaintiff's section 1981 claim is still cognizable, we will then consider the question of whether his request for a jury trial was timely.

---

1. Plaintiff commenced this action *pro se*. This Court appointed counsel for the plaintiff from the Court's *Pro Bono* Panel. Plaintiff's counsel was permitted to rebrief opposition to the then-pending motion to dismiss or, in the alternative, for summary judgment, which the defendant made in lieu of answering. In an unpublished order, we denied the defendant's motion in its entirety. Plaintiff's counsel was then granted the right to amend the complaint, clarifying the allegations as well as adding a demand for a jury trial. We deferred the question of entitlement to a jury trial pending the submission of memoranda of law.

## II.  LEGAL ANALYSIS

### A.  *Section 1981*

■ Plaintiff's section 1981 claim may be broken down into three components (1) discriminatory harassment, (2) failure to promote and (3) retaliatory discharge. SwissRe moves for summary judgment on all three components.  Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Section 1981 of the Civil Rights Act of 1866 provides that "all persons shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981.  In *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court recently held that with reference to the right to make contracts free from discrimination, section 1981 does not apply to conduct by the employer which occurs "after the contract relation has been established."  *Id.* at 2373.  The *Patterson* Court held that claims of racial harassment, "reprehensible though it be if true," are not actionable under section 1981 since such harassment constitutes postformation conduct.  *Id.* at 2374.  Instead, the Court held that "such conduct is actionable under the more expansive reach of Title VII of the Civil Rights Act of 1964."  *Id.*  Thus, since *Patterson*, it is clear that, as a matter of law, plaintiff cannot proceed under section 1981 with a claim of harassment during the course of employment.  *See, e.g., Yates v. Western Electric Co., Inc.*, Civ. No. 88–2280–5, 1989 WL 152222 (D.Kan. November 30, 1989); *Obago v. Union of American Hebrew Congregations*, No. 89 Civ. 0608, 1989 WL 88665 (S.D.N.Y. August 3, 1989); *Gonzalez v. The Home Insurance Co.*, No. 85 Civ. 5856, 1989 WL 106467 (S.D.N.Y. July 28, 1989).  Accordingly, we grant defendant's motion for summary judgment as to the portion of plaintiff's claim alleging racial harassment by a supervisor during the course of his employment.[2]

■ With regard to the racially motivated failure to promote claim, the *Patterson* Court pointed out, in dicta, that such claims implicate, in certain circumstances, the right to make contracts under section 1981.  109 S.Ct. at 2374, 2377 (must involve the opportunity to enter into a new contract with the employer).  The Court set out a standard for determining when a failure to promote claim would be cognizable under section 1981: the promotion must "rise to the level of an opportunity for a new and distinct relationship between the employer and the employee."  *Id.*  Examples of a new and distinct relationship include a promotion from associate to partner in a law firm, *id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); from clerk to supervisor, *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908 (4th Cir. 1989); from employee to officer, *Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004 (S.D.N.Y.1990); from project inspector to supervisory engineer, *Luna v. City and County of Denver*, 718 F.Supp. 854, 856–57 (D.Colo.1989); from salesman to manager, *Green v. Kinney Shoe Corp.*, 728 F.Supp. 768 (D.D.C.1989).  It is not enough that a promotion merely provides an increase in pay.  *See Williams v. National Railroad Passenger Corp.*, 716 F.Supp. 49, 51 (D.D.C.1989).

Plaintiff claims that a promotion from Production Coordinator to Supervisor of Production Control would have significantly altered his relationship with his employer.  Plaintiff has submitted excerpts from SwissRe's Employment Manual as well as an organizational chart of the SwissRe management to support this proposition.  Because we conclude that these exhibits demonstrate that SwissRe considers the Supervisor position a management position with different duties, and because the rela-

---

**2.** We infer that both parties presumed that *Patterson* would be applied retroactively, since neither party addressed the issue.  Indeed, most courts construing *Patterson* have found, implicitly or explicitly, that the decision should be applied retroactively.  *See Coleman v. Domino's Pizza, Inc.*, 728 F.Supp. 1528 at 1532 (S.D.Ala. 1990) (marshalling cases).  We agree with these courts, and conclude that *Patterson* will have retroactive application.

tionship of the employer with exempt employees differs significantly from the employer's relationship with non-exempt employees, with regard to, *inter alia*, methods of payment of salary and performance evaluations, we believe that plaintiff, for the purposes of this motion, has satisfied the standard of a "new and distinct relationship." Accordingly, since we believe plaintiff has raised colorable triable issues on the claim of failure to promote, defendant's motion for summary judgment on this ground is denied.

■ The final component of plaintiff's section 1981 claim is his complaint of retaliatory discharge. Prior to *Patterson*, it was the law in this circuit, as well as others, that section 1981 provided a cause of action for retaliatory discharge. *See Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 42–43 (2d Cir.1984). Since *Patterson*, it is questionable whether such a claim is cognizable under section 1981, for a few reasons, only one of which we need address here.[3] It is clear that a claim of retaliatory discharge does not implicate the right to "make contracts" aspect of section 1981. *Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49, 51 (D.D.C.1989). Accordingly, the only question remaining is whether retaliatory discharge impairs the right to "enforce contracts."

In *Patterson*, the Supreme Court opined that section 1981 "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race ..." and that "[t]he right to enforce contracts does not ... extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." 109 S.Ct. at 2373. The Court, citing the dissent in *Runyon v. McCrary*, 427 U.S. 160, 195 n. 5, 96

S.Ct. 2586, 2606 n. 5, 49 L.Ed.2d 415 (1976), construed the purpose of section 1981 as "remov[ing] the *legal* disabilities to sue, be a party, testify or enforce a contract." *Id.* (emphasis in *Runyon*).

Since *Patterson*, courts have specifically looked at whether a plaintiff, by way of the alleged retaliatory discharge, was somehow impeded from filing claims with the EEOC and/or with the court. *See Overby v. Chevron USA, Inc.*, 884 F.2d 470, 473 (9th Cir.1989); *Alexander v. New York Medical College*, 721 F.Supp. 587 (S.D.N.Y.1989); *Williams v. National R.R. Passenger Corp., supra*, 716 F.Supp. at 51–52; *see also Matthews v. Northern Telecom, Inc.*, No. 88 Civ. 583, 1989 WL 131343 (S.D.N.Y. Nov. 1, 1989) (plaintiff who alleged that he had been terminated discriminatorily, sought redress under section 1981 for retaliatory discharge of plaintiff's key witness by the defendant; court held that while defendant may have placed "practical hindrances in plaintiff's way ... it has not caused legal obstruction of plaintiff's case"). To these courts, the mere fact of the retaliatory dismissal has not been found to constitute the *legal* barrier to enforcement of the employment contract required under section 1981. We agree with these courts, and respectfully disagree with those courts that have found otherwise. *See Yates v. Western Electric Co., Inc.*, Civ. No. 88–2280, 1989 WL 152222 (D.Kan. Nov. 30, 1989); *English v. General Dev. Corp.*, 717 F.Supp. 628, 630–34 (N.D.Ill.1989); *Jordan v. U.S. West Direct Co.*, 716 F.Supp. 1366, 1368–69 (D.Colo.1989). To hold that the retaliatory dismissal alone is a sufficient obstacle to enforcement of the contract would be to disregard the Supreme Court's strong admonishment that courts not stretch the meaning of section 1981 to reach conduct already proscribed under Title VII. *See Patterson*, 109 S.Ct. 2375.

---

**3.** Specifically, we need not consider whether the holding in *Choudhury*, that no proof of racial animus is required to state a cause of action under section 1981, is still valid after *Patterson*. In a recent opinion, one panel of the Court of Appeals for the Seventh Circuit recognized, in three separate opinions, that the issue remains open after *Patterson* as to whether or not the

retaliation itself must be racially motivated in order to be actionable under section 1981. *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir. 1989). The *Malhotra* court declined to give its opinion on the matter, dismissing the plaintiff's section 1981 retaliatory dismissal claim for failure to create a triable issue. *Id.* at 1313.

Under this analysis, we find that plaintiff has not stated, as a matter of law, a cognizable claim under section 1981 for retaliatory discharge. Plaintiff has not alleged that the defendant in any way obstructed the former's access to either the EEOC or the court. *Alexander, supra,* at 721 F.Supp. at 588 n. 5 ("A retaliatory discharge in no way obstructs access to judicial redress, as is evidenced by [plaintiff's] presence before this Court."). Furthermore, plaintiff has asserted the retaliatory discharge claim in his Title VII action, and thus, the contention will be litigated. Accordingly, defendant is granted partial summary judgment on plaintiff's claim for retaliatory discharge under section 1981.

### B. *Right to Jury Trial*

■ Miller, recognizing that a plaintiff may be deemed to have waived his constitutional right to a jury trial by not demanding it in his complaint, *see* Fed.R.Civ.Pro. 38(b), has nonetheless moved pursuant to Rule 39(b) for a jury trial. Although a Rule 39(b) motion is addressed to the court's discretion, the Second Circuit has placed a "gloss" on Rules 38(b) and 39(b) that cannot be ignored. *South African Airways v. Tawil,* 658 F.Supp. 889, 891 (S.D.N.Y.1987) (" 'the settled course of decision [has] placed a gloss upon [Rule 38(b)] which a judge [can] no more disregard than if the words appeared in the Rule itself.' ") (quoting *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir. 1967)). The Circuit has stated that the "area open to the Judge's discretion has shrunk to determining whether the moving party's showing beyond mere inadvertence is sufficient to justify relief." *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967). Accordingly, if a failure to make a timely demand was inadvertent and unintended, it may be an abuse of discretion to grant a Rule 39(b) motion. *Washington v. New York City Bd. of Estimate,* 709 F.2d 792, 795, 798 (2d Cir.1983), *cert. denied,* 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). This is so even where the plaintiff filed the complaint *pro se. Id.*

In *Washington,* the Second Circuit affirmed the district court's denial of a Rule 39(b) motion where a previously *pro se* litigant moved for a jury trial immediately upon securing counsel, reasoning that the "unintentional or unknowing failures of all litigants [those appearing *pro se* as well as those appearing with counsel] to comply with Rule 38 are dealt with equally." 709 F.2d 795–98. Thus, it follows that not every plaintiff who commences litigation *pro se* and later secures counsel is entitled to a successful Rule 39(b) motion. In the instant case, plaintiff did not request a jury trial immediately upon securing counsel, but rather, waited five months after counsel was appointed to request a jury trial. On these facts, we believe it would be inappropriate to grant plaintiff's request for a jury trial and the motion is therefore denied.

## III. CONCLUSION

In light of all of the foregoing, the portion of the plaintiff's section 1981 claim that is still legally cognizable after *Patterson,* and in which plaintiff has raised genuine issues of fact precluding summary judgment, concerns his allegation that the defendant discriminatorily failed to promote him on the basis of his race. The racial harassment and retaliatory discharge claims brought under section 1981 are dismissed. Accordingly, the defendant's motion for partial summary judgment is hereby granted in part and denied in part. The plaintiff's motion for a jury trial is hereby denied. The parties shall submit a joint pre-trial order by March 19, 1990 and the matter will be placed on the Court's ready-trial calendar as of June 26, 1990.

SO ORDERED.