Lia **FERNANDEZ** and Marci Leggette, Plaintiffs,

v.

George **KOGAN**, Barbara Kogan, and Kogan and Company, Defendants.

No. 88 Civ. 8883 (DNE).

United States District Court, S.D. New York.

June 18, 1990.

Stults & Marshall, New York City, John T. Van Der Tuin, of counsel, for plaintiffs.

Goodman & Saperstein, Garden City, N.Y., Martin I. Saperstein, of counsel, for defendants.

## OPINION AND ORDER

EDELSTEIN, District Judge:

## BACKGROUND

This order is issued pursuant to defendants' motion to dismiss two of plaintiffs' seven claims for failure to state a claim upon which relief may be granted (Fed.R. Civ.P. 12(b)(6)) and defendants' motion to dismiss the entire action for lack of subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)). These motions were filed prior to any discovery, and for the purposes of their resolution, the allegations of the complaint are construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957) (A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988).

In light of the Supreme Court's decision in *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and the subsequent decisions in this District, both of defendant's motions are granted.

## FACTS

Plaintiffs were employed as salespersons at James II, a New York City antique store selling 19th century English porcelain. On or about June 16, 1988, defendants, George and Barbara Kogan, contacted plaintiff Fernandez and informed her that they wished to open an antique store in New York City that would be modeled after James II. The defendants informed Fernandez that they needed someone of Fernandez's experience to open and manage the store, Kogan and Company.

On the following day, the Kogans and Fernandez had a meeting during which the terms of an oral employment contract were discussed and finalized. Fernandez alleges that she was told that she would not be terminated for the first year except for good cause. After contracting, the parties discussed various plans about the new store's inventory, the composition of defendant Kogan and Company, and the purchasing trip to take place in August 1988. During this meeting, the parties also discussed the need for an additional person, one who knew inventory and other control systems, and Fernandez suggested that plaintiff Leggette would be perfect for the job.

On June 28, 1988, the defendants, Barbara and George Kogan, and plaintiffs met to discuss Leggette's employment. Once again, various terms of employment were discussed and orally agreed upon. Leggette similarly alleges she was offered a term of employment during which she would only be fired for good cause.

During the next two months, the parties made numerous preparations for the opening of the Kogan and Company store. During September and October 1988, Fernandez hired four employees, with the approval of the Kogans, to work as support staff at the store, three black and one Hispanic (hereinafter referred to as "minority employees").

Allegedly, Barbara Kogan told Fernandez that the minority employees should not appear in the store for the press meeting or during the opening evening party on November 3, 1988. Fernandez expressed her disagreement with both the directives, but nevertheless acquiesced. During the first week of business, Ms. Kogan also allegedly complained about the minority employees' use of the store bathroom during operating hours and expressed a desire for them to use another facility. Fernandez complained that this was wrong, discriminatory and would embarrass and dispirit the employees. Although Fernandez disapproved of Ms. Kogan's request, she agreed to inquire about the use of facilities in the base-

ment of the building. Ms. Kogan also allegedly stated that the minority employees should be discouraged from appearing in the public area of the store when customers were present. Fernandez once again expressed her disapproval of the treatment of the employees. Throughout this period, Leggette supported Fernandez's position regarding the treatment of the minority employees.

On Sunday, November 13, 1988, Ms. Kogan told Fernandez not to go to the store but rather to meet with the Kogans at their apartment. When Mr. Fernandez called the store on November 15, 1988 to report that his wife was ill, he was informed she no longer worked there. Later that same day, Leggette was similarly informed that Fernandez was no longer employed at Kogan and Company.

On the evening of November 23, 1988, Leggette had a conversation with Ms. Kogan concerning her medical insurance. After some disagreement, Leggette was told not to bother returning to the store the following working day as she was discharged.

Plaintiffs filed the current action making seven claims for relief. The first five claims concern the alleged breach of oral and express contract provisions and allege that the defendants fraudulently induced the plaintiffs to terminate their positions at James II. The sixth and seventh claims, providing this court with jurisdiction, allege that the plaintiffs were discharged in retaliation of their support of the minority employees in violation of 42 U.S.C. § 1981.[1]

---

**1.** Plaintiffs' complaint alleges that venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). However, subsection (a) deals with actions founded solely on diversity which plaintiffs concede this action is not. Further, plaintiffs allege that venue under subsection (a) is based on the residence of plaintiff Fernandez. Even if subsection (a) were the appropriate provision for venue, it provides that venue is proper in the district where *all* plaintiffs reside, if any, not simply where one of the plaintiffs resides.

The appropriate venue statute for this action is 28 U.S.C. § 1391(*b*) which provides for venue in cases not founded on diversity. This provi-

## DISCUSSION

### A. Section 1981

Plaintiffs rest their sixth and seventh claims for relief, as well as the jurisdiction of this court, on alleged violations of Section 1981 of the Civil Rights Act of 1866. The Section provides that "all persons shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981 (1983). The plaintiffs claim that they were fired for defending the rights of the minority employees.

■ First, the plaintiffs, who are white, have standing to sue under Section 1981. *See Manoharan v. Columbia Univ. College of Phys. & Surgeons*, 842 F.2d 590 (2d Cir.1988) (Plaintiffs may assert a Section 1981 action even though they have not been the subject of the underlying discrimination.); *See also Abel v. Bonfanti*, 625 F.Supp. 263 (S.D.N.Y.1985) (permitting an action under Section 1981 by a white person who has been punished for trying to vindicate the rights of minorities); *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38 (2d Cir.1984) (permitting a retaliatory discharge claim under Section 1981).

Although the plaintiffs' complaint sufficiently states a claim for relief under the *Abel* standard,[2] after *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1985), *Abel* is no longer dispositive.

In *Patterson*, a black woman alleged she was harassed, passed over for promotion, and ultimately discharged because of her

---

sion does not include the option of venue in the place of plaintiffs' residence. However, since the cause of action arose in the Southern District of New York, venue is proper in this Court.

**2.** The elements necessary to state a claim are: (1) the plaintiff engaged in a protected activity, (2) the plaintiff was disadvantaged in her employment, and (3) the harm was in retaliation for the protected activity. *Abel* at 267; *See also DeCintio v. Westchester Co. Medical Center*, 821 F.2d 111 (2d Cir.1987). The plaintiffs have alleged facts to support each of these necessary elements.

race.[3] The Court held that Section 1981 does not apply to conduct by the employer which occurs "after the contract relation has been established." *Id.* 109 S.Ct. at 2373. Since *Patterson,* it is questionable whether a claim for retaliatory discharge is still cognizable under Section 1981.[4] *Compare Hicks v. Brown Group,* 902 F.2d 630 (8th Cir.1990) *with Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir.1990). However, the cases in this District overwhelmingly support the proposition that retaliatory discharge is no longer actionable under Section 1981. *See Williams v. Miracle Plywood Corp.,* No. 88–7714(PKL), 1990 WL 26310, 1990 U.S. Dist. LEXIS 2502 (S.D.N.Y. Mar. 8, 1990) (retaliatory discharge does not involve the right to make or enforce a contract); *Long v. AT & T Info. Sys.,* 733 F.Supp. 188 (S.D.N.Y.1990); *Miller v. SwissRe Holding, Inc.,* 731 F.Supp. 129 (S.D.N.Y.1990) (holding that retaliatory dismissal after *Patterson* is no longer actionable). This court similarly finds plaintiffs' Section 1981 claims do not survive *Patterson.*

The *Patterson* Court emphasized that the plain language of the statute protects only two rights: the right to make contracts and the right to enforce contracts. The Court explicitly stated that "[w]here an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." *Patterson, supra,* 109 S.Ct. at 2372. The Supreme Court stressed that lower courts should not "read the terms 'make' and 'enforce' beyond their plain and common sense meaning." *Id.* at 2377 n. 6.

The Court held that the protection to *make* contracts "extends only to the formation of the contract, but not to problems that may arise later from the conditions of continuing employment.... including breach of the terms of the contract." *Id.* at 2372–73. The statute prohibits "the re-

fusal to enter into a contract, ..., as well as the offer to make a contract only on discriminatory terms." *Id.* at 2372.

The second of these guarantees, the right to *enforce* contracts, "embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.* at 2373. This also includes "wholly *private* efforts to impede access to the courts or to obstruct nonjudicial methods of adjudicating disputes." (emphasis in original) *Id.*

█ This court may retroactively apply the *Patterson* decision to discrimination which predates it. *See Song v. Ives Laboratories, Inc.,* 735 F.Supp. 550 (S.D.N.Y. 1990); *Miller, supra.* The general rule is that cases are decided "in accordance with the law existing at the time of the decision." *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). Although in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the Court balanced three factors to determine when nonretroactivity is appropriate, courts must apply new decisional law retroactively without regard to the *Huson* criteria when the Supreme Court itself has given retroactive application to a newly-adopted principle "to govern the very claim at issue in the case before it." *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 241 (2d Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *See also Song v. Ives Laboratories, supra,* 735 F.Supp. at 551–552. (applying *Patterson* retroactively to plaintiff's retaliatory discharge claim). In *Patterson,* the Court retroactively applied its ruling concerning the scope of Section 1981 and barred the very claim that was in front of the Court. Given the posture of the *Patterson* decision, this court will examine the

---

3. The district court determined that the racial harassment charge was not actionable under § 1981 and declined to submit that part of the case to the jury. The jury found for the defendant on both remaining claims. The plaintiff did not raise the discharge claim on appeal.

4. The Supreme Court has not resolved this issue. As noted, *supra* note 3, *Patterson* did not raise the issue on appeal. *See also Lytle v. Household Mfg., Inc.,* — U.S. ——, 110 S.Ct. 1331, 1336 n. 3, 108 L.Ed.2d 504 (1990) ("On remand, the Fourth Circuit should consider the impact of *Patterson* on Lytle's § 1981 [retaliatory discharge] claims.").

plaintiffs' Section 1981 claims under the Supreme Court's recent interpretation of the statute.

■ Under the *Patterson* analysis, the plaintiffs' claim of retaliatory discharge is not, as a matter of law, cognizable under Section 1981. The plaintiffs' discharge took place several months after the initial contract formation. At best, such conduct amounts to a breach of contract under state law and the Supreme Court specifically held that "conduct amounting to a breach of contract under state law is precisely what the language of § 1981 does not cover." *Patterson, supra,* 109 S.Ct. at 2376. To do so "would federalize all state-law claims for breach of contract where racial animus is alleged." *Id.*

■ The plaintiffs allege that at the time of contracting the defendants had no intention of fulfilling their contractual obligations. However, plaintiffs do not allege that racial motivation was a factor in this bad-faith. All the alleged acts of discrimination against the minority employees which precipitated the firings occurred after the initial contract formation. Therefore, plaintiffs' claims do not involve the right to make contracts on non-discriminatory terms and are not covered by Section 1981.

Additionally, plaintiffs do not allege that the defendants in any way obstructed the former's access to the courts, as evidenced by plaintiffs' presence before this court. Therefore, the plaintiffs fail to state a claim upon which relief may be granted under Section 1981.

■ Plaintiffs contend that since they are not able to file a Title VII action,[5] they should be permitted to pursue the present action. However, the plaintiffs misconstrue the *Patterson* decision. The holding did not rest on the overlap of Title VII and Section 1981 provisions, but rather the Court held the availability of Title VII deterred it from making a "tortious construction" of Section 1981. *Patterson, supra,* 109 S.Ct. at 2375. The interpretation was based on "a fair and natural reading [of]

the statute." *Id.* at 2377. Thus, plaintiffs' argument is untenable. Accordingly, defendant's motion to dismiss claims six and seven is granted.

### B. Subject Matter Jurisdiction

■ Having dismissed plaintiffs' claims based on Section 1981, this court now must decide whether subject matter jurisdiction exists to hear the remainder of the plaintiffs' action.

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that a state claim may be attached to a colorable federal claim if the two claims arise out of "a common nucleus of operative facts." *Id.* at 725, 86 S.Ct. at 1138. The plaintiffs' Section 1981 claims were colorable, not "insubstantial, immaterial, or frivolous" and arose out of the same operative set of facts as the breach of contract claims. *Cf. Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (A suit "may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous."). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted); *See also Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case … the federal court should ordinarily dismiss the state claims.") (citation omitted).

In determining whether to exercise pendant jurisdiction, a district court should balance "the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 809 (2d Cir. 1979) (citing *Gibbs, supra,* 383 U.S. at 715, 86 S.Ct. at 1130). In the present case, all

---

**5.** Title VII [42 U.S.C. § 2000e] requires that the defendant firm employ at least 15 persons.

**800**

federal-law claims have been eliminated before full-scale discovery has begun and only plaintiffs' state-law claims remain. The above considerations of fairness, economy, and avoiding needless decision of state law resolve in favor of this court not retaining jurisdiction over the action. *See Williams, supra,* slip op. at 13; *See also Baylis, supra,* at 665.

Accordingly, this court declines to exercise jurisdiction over the remainder of this controversy. The plaintiffs' first through fifth causes of action are dismissed without prejudice to their renewal in state court.

## CONCLUSION

Defendant's motion to dismiss plaintiff's Section 1981 claims for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), is granted. The plaintiffs' remaining state-law claims are dismissed for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1).

SO ORDERED.