**Kenneth DASH, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES and Equicor–Equitable HCA Corp., Defendant.**

**No. CV 87–2804.**

United States District Court, E.D. New York.

Dec. 21, 1990.

Frederick K. Brewington, New York City, for plaintiff.

McDermott, Will & Emery by William L. Kandel, Russell G. Tisman, New York City, for defendants.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

Plaintiff, Kenneth Dash, sues the Equitable Life Assurance Society of the United States and Equicor–Equitable HCA Corp. ("Equitable") for racial discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1988), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1988). Specifically, he claims that he was

subjected to unfair job evaluations, denied promotion and discharged because he is black. He further claims that his discharge was in retaliation for complaints of employment discrimination that he made to the New York State Division of Human Rights. Defendants move for dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules.

By order dated May 29, 1990, this court denied defendants' motion insofar as it relates to claims pursued under Title VII. The court reserved on the § 1981 challenge, referring to Magistrate David L. Jordan for report and recommendation the question of whether the evidence adduced would support a finding that a promotion from plaintiff's position as a Senior Business Analyst to the denied position of Team Leader constituted an opportunity to enter into a "new and distinct" contractual relation between the parties, as required by the recent Supreme Court decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989).

On August 24, 1990, Magistrate Jordan recommended denial of defendants' motion relating to plaintiff's § 1981 promotion claim. His review of the evidence revealed that a promotion from Senior Business Analyst to Team Leader "involves increased responsibility, salary and opportunities, and most important, a change from a nonsupervisory position to one of supervisor." Defendants have objected to the report and recommendation, complaining, *inter alia*, that the magistrate did not adequately articulate the burdens of the parties with respect to the issue in dispute, and that his analysis of the facts gives too expansive a reading to the applicability of § 1981 to promotion claims.

This court has carefully considered Magistrate Jordan's report, all of the papers submitted by the parties and the body of case law that has developed since *Patterson* relating to § 1981 claims of failure to promote. The court finds that a question of fact is presented as to whether the change in position from Senior Business Analyst to Team Leader creates an opportunity to form a new contractual relationship between employer and employee. Accordingly, the motion for summary judgment on plaintiff's promotion claim is denied.

Plaintiff's claims of discriminatory job evaluations, discriminatory discharge and retaliatory discharge are, nevertheless, dismissed.

*Factual Background*

The court here details only those matters that relate to its decision on plaintiff's § 1981 claims. The following facts are either undisputed or viewed in the light most favorable to the plaintiff.

Kenneth Dash began working for Equitable in 1954 as a mailroom clerk. Over the next thirty years his work received consistently favorable evaluations. By 1984, Dash had attained the position of Senior Business Analyst at Equitable's Bethpage, Long Island office, in which capacity he performed highly technical computer analyses on client accounts.

It also appears, however, from references in various job evaluations, that Dash purportedly had problems dealing with his fellow employees. Thus, as early as 1975, Janice Nesbitt, a black female supervisor, recommended that Dash "not be considered for supervisory responsibilities." Defendants now submit affidavits from Equitable employees detailing particular incidents of bizarre or irresponsible behavior that would cast doubt on plaintiff's potential as a supervisor, for example, his periodic refusal to speak to co-workers on Wednesdays. Dash disputes the substance of many of these reports.

Senior Business Analysts for Equitable generally work in teams of seven or eight persons under the supervision of a Team Leader. As a Business Analyst, Dash had attained a salary grade of 9, level I/J, within the Equitable employment scheme. Team leaders were usually rated grade 10, level K/L. As Equitable Vice President Robert Perite has explained, a Team Leader might start at a level K and then ad-

vance to Level L. Level L represents an employee's initial entry into Equitable management.

In October 1985, four Team Leader positions became available at Equitable's Bethpage office. Although it was customary to post such positions, Mr. Perite waived posting at the request of various of his subordinate supervisors who told him that they had already identified the most qualified people available for the positions. All were women, three of them white, one a Native American. All were junior to Dash in terms of years of service with Equitable. Their work evaluations, however, reflected "superior" performance, the highest rating category.

Sometime in this period, the precise date being unclear, Dash advised his superiors at Equitable that he wished to be considered for a Team Leader position. Equitable maintains that all such positions were filled by the time Dash made his desires known. He was subsequently offered a position as a "back-up" Team Leader, which he initially refused but later accepted.

In September 1986, plaintiff filed a race discrimination claim against defendants with the New York State Division of Human Rights stemming from his failure to receive a promotion to Team Leader. On September 14, 1987, the State Division found probable cause to believe that Equitable had engaged in unlawful discrimination.

On December 18, 1987, after a number of incidents, the particulars of which are sharply disputed by the parties, Dash was discharged for gross misconduct and insubordination.

### Discussion

I. *The Standards for Dismissal and Summary Judgment*

Because defendants complain that Magistrate Jordan did not clearly articulate the burdens of the respective parties, the court here sets forth the standards that governs dispositive motions, whether for summary judgment or dismissal.

A motion to dismiss requires a court to accept all allegations pleaded in a complaint as true, *Ad–Hoc Comm. v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987), and to draw all inferences liberally in favor of the plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). The issue is not whether the plaintiff will ultimately prevail but whether he is even entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Thus, unless a defendant can persuade the court that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," a motion to dismiss must be denied. *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

A motion for summary judgment may be granted only if the pleadings and other papers on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). It is, of course, the movant who bears the initial burden of establishing that there is no such material issue to be submitted to a trier of fact. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). This can be done by pointing to an absence of evidence in the record to support an essential element of the non-movant's claim. The burden then shifts to the non-movant who must "come forward with persuasive evidence that his claim is not 'implausible.'" *Brady v. Town of Colchester*, 863 F.2d at 211 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

In evaluating the sufficiency of the non-moving party's evidence, courts must "proceed very cautiously." *Id.* All ambiguities must be resolved in favor of the non-moving party and all inferences drawn in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 333 n. 2, 106 S.Ct. 2548, 2551 n. 2, 91

L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d at 720; *Brady v. Town of Colchester,* 863 F.2d at 210. The court's role is not to try issues of fact, but to determine if there are such issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Eye Assocs., P.C. v. ImcomRx Systems, Ltd.,* 912 F.2d 23, 26 (2d Cir.1990).

To the extent either of the parties remains in doubt on the matter, the court is reviewing defendants' motion as it pertains to plaintiff's promotion claim as one for summary judgment. It will thus take into consideration all papers submitted by the parties. The motion as it pertains to discriminatory job evaluations and discharge and retaliatory discharge is treated as one for dismissal.

## II. *Section 1981 Claims in Light of Patterson v. McLean Credit Union*

Section 1981 of Title 42 of the United States Code guarantees that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

■ In *Patterson,* the Supreme Court held that § 1981, by its very terms, proscribes only that conduct evidencing discrimination in the "mak[ing] and enforce[ment]" of contracts, not any and all discriminatory behavior affecting contract relations between parties. 109 S.Ct. at 2372–73. The Court reasoned that "the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at 2373. Any such discriminatory conduct is more properly the subject of a Title VII, not a § 1981, action. *Id.* at 2375.

■ Indeed, even the right to enforce contracts is actionable under § 1981 only to the extent that a defendant is accused of impeding plaintiff's "ability to enforce through legal process his or her established contract rights." *Id.* at 2373.

## III. *The Effect of Patterson on Plaintiff's Claims*

Plaintiff commenced this lawsuit before *Patterson* was decided. It is well settled, however, at least in this circuit, that *Patterson* may be applied retroactively. *See, e.g., Gonzalez v. Home Ins. Co.,* 909 F.2d 716, 723 (2d Cir.1990); *Adames v. Mitsubishi Bank, Ltd.,* 1990 WL 182435, 1990 U.S. Dist. LEXIS 15784, at 23–27 (E.D.N.Y. 1990); *Fernandez v. Kogan,* 738 F.Supp. 795, 798 (S.D.N.Y.1990).

### A. Discriminatory Job Evaluations and Termination

■ Even if all facts adduced are viewed in the light most favorable to plaintiff, *Patterson* plainly mandates dismissal of so much of his § 1981 action as complains of discriminatory job evaluations during his employment with Equitable. Such conduct post-dates the formation of any employment contract and relates to the conditions under which plaintiff worked. As such, it is appropriately addressed by Title VII.

■ Similarly, the court must dismiss plaintiff's § 1981 claim of discriminatory discharge. As the Second Circuit has only recently observed, "[d]ischarge from employment involves neither the making nor the enforcement of a contract, but rather conduct subsequent to the formation of the contract. [Thus,] an allegedly discriminatory termination of a contract is not actionable under section 1981." *Patterson v. Intercoast Management of Hartford, Inc.,* 918 F.2d 12, 14 (2d Cir.1990). *Accord Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805, 807–08 (5th Cir.1990); *contra Hicks v. Brown Group, Inc.,* 902 F.2d 630, 638–42 (8th Cir.1990).

### B. Retaliatory Discharge

■ Numerous courts have also held that retaliatory discharge claims can no longer be heard pursuant to § 1981 in light

of *Patterson,* unless the discharge is alleged to have actually obstructed plaintiff's access to the courts or some other process for the resolution of contract disputes. *See, e.g., Carter v. South Central Bell,* 912 F.2d 832, 839–40 (5th Cir.1990); *Overby v. Chevron USA, Inc.,* 884 F.2d 470, 473 (9th Cir.1989); *Fernandez v. Kogan,* 738 F.Supp. at 798 ("cases in this District overwhelmingly support the proposition that retaliatory discharge is no longer actionable under Section 1981").

In this case, plaintiff has not alleged that his discharge impaired his ability to enforce contractual rights either through this court or otherwise. Indeed, the evidence suggests that Dash has vigorously pursued all avenues of redress. Accordingly, the court must dismiss that portion of his § 1981 claim alleging retaliatory discharge.

### C. Denial of Promotion

Plaintiff claims that he was denied promotion from Business Analyst to Team Leader because of his race. The Supreme Court recognized in *Patterson* that certain promotion denials could be pursued under § 1981. Whether a particular claim "is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." 109 S.Ct. at 2377. If it did, "the employer's refusal to enter the new contract is actionable under § 1981." *Id.*

The Court did, however, caution lower courts against hearing promotion cases that did not really come within § 1981's express concern with the "right ... to make ... contracts." *Id.* It explained that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* By way of illustration, the Court cited without discussion to the facts of *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), a case in which an associate sued a law firm under Title VII for allegedly refusing to accept her as a partner because of her gender.

The Court's recognition that some—but presumably not all—promotion claims are cognizable under § 1981 has presented a considerable challenge to the lower courts, which have struggled to draw principled, if not consistent, lines of distinction between various promotion situations.

For example, a number of courts have held that denial of a promotion involving nothing more than a pay increase, without any change in title or responsibilities, does not reflect a sufficiently new and distinct relation between employer and employee so as to implicate § 1981's right to make contracts. *Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49, 51 (D.D.C.1989); *accord Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 196 (S.D.N.Y. 1990); *Miller v. SwissRe Holding, Inc.,* 731 F.Supp. 129, 131 (S.D.N.Y.1990); *Green v. Kinney Shoe Corp.,* 728 F.Supp. 768, 777 (D.D.C.1989). Such "promotions" are more commonly thought of simply as "raises," which the parties perceive to be part of routine advancement contemplated within the original contract of employment. *See Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1311 (7th Cir.1989).

Some courts have gone beyond this most basic distinction and focused on the degree of difference between the job held and the job sought to determine whether the particular promotion denial is actionable under § 1981 after *Patterson.* Thus, a blue collar worker denied promotion to a white collar job was held to have stated a § 1981 claim in *Matthews v. Northern Telecom, Inc.,* 1989 WL 4031, 1989 U.S. Dist. LEXIS 12926 (S.D.N.Y.1989), because of the significant status change in the two job categories. Promotions that move a worker from a nonsupervisory to a supervisory position have also been held actionable under § 1981. *See, e.g., Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908 (4th Cir.1989) (billing clerk denied promotion to department supervisor can sue under § 1981); *Toliver v. Sullivan Diagnostic Treatment Center,* 748 F.Supp. 223 (S.D.N.Y.1990) (denial of promotion from counselor to program supervisor actionable under § 1981); *Green v. Kinney Shoe Corp.,* 728

F.Supp. 768 (D.D.C.1989) (manager-in-waiting denied manager position can sue under § 1981).

Still other courts, focusing on the Supreme Court's citation to *Hishon*, have required evidence of some "fundamental" change in the employment relationship. *See, e.g., Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004, 1009 (S.D.N.Y.1990) (denial of promotion from Assistant Bank Manager to Assistant Treasurer was actionable under § 1981, but not denial of promotion from Assistant Bank Manager to Branch Manager, since Assistant Treasurer position would have changed relationship from that of employee to bank officer); *Jenkins v. Ward*, 1990 WL 103960, 1990 U.S. Dist. LEXIS 8904, at 14 (S.D.N.Y.1990) (denial of promotion from police officer to sergeant not enough to support § 1981 claim); *Crader v. Concordia College*, 724 F.Supp. 558, 563 (N.D.Ill. 1989) (promotion from Assistant Director to Director of Housekeeping, although reflecting substantial increase in responsibility and authority, not reflective of fundamental change in employment relationship); *see also Long v. AT & T Information Systems, Inc.*, 733 F.Supp. at 196 (S.D.N.Y. 1990) (citing need to show "fundamental change" in employment situation).

The lack of consistency among the various approaches, while permitting the two sides in this case to cite authority in support of their respective positions, provides little guidance for the court. Indeed, it seems questionable whether any bright line formulas can be uniformly applied as a matter of law to the plethora of promotion decisions that are made every day in the labor force. In *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), Judge Posner posed a number of hypotheticals that illustrate the difficulty. For example, the mere fact that some in-house promotions are so routine as to preclude their being actionable under § 1981 does not mean that all in-house promotions are outside the statute's protection. *Hishon* itself involved the classic case of an in-house promotion that would have created a significantly different contractual relationship between the plaintiff and her law firm. *Id.* at 1311.

Similarly, any attempt to categorize various jobs, particularly those that can be filled either by promotion or appointment, risks the anomalous result of a discriminatory job denial being actionable under § 1981 for the outside applicant but not for the person working inside the firm. Judge Cudahy, concurring in *Malhotra*, found nothing in *Patterson* to warrant such line-drawing:

> There is no obvious reason why the Court did not intend by "new and distinct relation" to simply refer to "a new job" as laypersons might understand the term. The "new and distinct relation" test may simply involve a substantial change in the plaintiff's job duties and responsibilities. At least no cogent rationale has been cited for the test's meaning anything more.

*Id.* at 1317 n. 6.

The conclusion that this court draws from the various thoughtful approaches in *Malhotra* is that the crux of the *Patterson* holding is indeed its emphasis on the right safeguarded by § 1981, *i.e.*, the right to *make contracts. Patterson v. McLean Credit Union*, 109 S.Ct. at 2377. The citation to *Hishon* and the use of the phrase "new and distinct relation" only serve to highlight that a promotion cannot be actionable under § 1981 if it involves the sort of routine advancement that is implicit in the original contract. *See generally Duse v. International Business Machines Corp.*, 748 F.Supp. 956 (D.Conn.1990).

Thus, the critical inquiry, in most cases, is one of fact and not of law. *See Luna v. City and County of Denver*, 718 F.Supp. 854, 857 (D.Colo.1989) (existence of contract is question of fact for the jury); *Matthews v. Northern Telecom, Inc.*, 1989 WL 131343, 1989 U.S. Dist. LEXIS 12926, at 6 (whether promotion sought by plaintiff would create a "new and distinct relation" with employer is "issue[ ] of material fact which may not be decided now by summary judgment"). As in cases of oral contract, the primary aim is to determine the intent of the parties, a question that is generally one for the jury. *See, e.g., Salem Laundry Co. v. New England Teamsters &*

*Trucking Indus. Pension Fund*, 829 F.2d 278, 280 (1st Cir.1987) (citing *Corbin on Contracts* § 18(B), at 21 (Kaufman Supp. 1984)). A jury must hear evidence about the job held by a plaintiff; the understanding reached with the employer at the time that the job was accepted; the job to which promotion was sought; the terms and conditions on which the job is offered to employees or outside applicants; and the relative way in which both jobs fit into the overall operations of the employer. Only then can it decide whether the parties intended that a particular promotion be viewed as a natural outgrowth of the original terms and conditions of employment, or as an opportunity for an employee "to enter into a new contract with the employer." *Patterson v. McLean Credit Union*, 109 S.Ct. at 2377.

A significant number of courts balance a wide-range of factors in determining whether a promotion denial is actionable under § 1981. *See, e.g., Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. at 1008; *Hudgens v. Harper–Grace Hospitals*, 728 F.Supp. 1321, 1324–25 (E.D.Mich. 1990). This court thinks such an approach sound, for only in such a manner can a factfinder determine the intent of the parties with respect to the present "contract" under which a plaintiff is employed, as well as the effect of any promotion on the terms and conditions of that contract. *Compare Luna v. City and County of Denver*, 718 F.Supp. 854 (D.Colo.1989) (clearly treating question as one for jury) *with Hudgens v. Harper–Grace Hospitals*, 728 F.Supp. 1321 (E.D.Mich.1990) (suggesting that balancing of factual considerations may be one for court).

 In this case, although the question may be a close one, the court finds that plaintiff has adduced sufficient evidence to warrant this question going forward to trial. Concededly, all Equitable employees work under a general employment contract. But that is not to say that certain promotions may not still provide employees with the opportunity significantly to alter their relationship with their employer. Similarly, the fact that Team Leaders and Business Analysts both are paid salaries pursuant to a uniform formula, and the fact that the perquisites available to Team Leaders seem of relatively minor significance compared to those afforded Business Analysts, are simply matters to be weighed by a jury—perhaps in defendants' favor. They are not, however, sufficient to permit this court to say, as a matter of law, that no reasonable jury could find, on the facts of this case, that the position of Team Leader did not involve a different contractual relationship from that of Business Analyst.

Certainly, a promotion from Business Analyst to Team Leader is reflective of more than the sort of routine advancement marked only by a pay raise, such as was noted in *Malhotra*. A Team Leader is a supervisor. Defendants themselves acknowledge that Team Leaders are "first line" management for the company. Conceivably, certain employers might be willing to have minority employees rise to certain levels within their organizations and yet refuse, based on race, to afford them the opportunity to enter into contractual relationships that reflect a sharing of management responsibilities. This court does not predict that a jury will find that to have been this case. It holds only that the issue of whether a Team Leader appointment would have afforded plaintiff "the opportunity to enter into a new contract" with defendants cannot be resolved as a matter of law. To the extent the analyses employed by other courts yield a different result, this court is unpersuaded that such approaches are mandated by *Patterson*.

The plaintiff's claim of discriminatory denial of promotion will go forward to trial.

### Conclusion

Defendants' motions for dismissal or summary judgment on plaintiff's § 1981 claims are granted as to allegations of discriminatory discharge and job evaluations and as to allegations of retaliatory discharge. The motions are denied as to the claim of discriminatory denial of promotion.

SO ORDERED.