**Janice E. CASTLE, Plaintiff,**

v.

**CENTRAL BENEFITS MUTUAL INSURANCE CO., et al.,
Defendants.**

No. C2–87–0030.

United States District Court,
S.D. Ohio, E.D.

Nov. 21, 1990.

Walter Gene Brooks, Columbus, Ohio, for plaintiff.

Manuel Jose Asensio, III, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the motion filed by the defendants on October 17, 1988 for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Janice E. Castle, initiated this action under 42 U.S.C. § 1981, on January 15, 1987. Plaintiff further seeks relief under 42 U.S.C. §§ 1985, 1986, and 1988. For the foregoing reasons, defendants' motion is hereby GRANTED.

## FACTS

Plaintiff, Janice E. Castle, was employed by Central Benefits Mutual Insurance Co. (Central Benefits) as a Health Claims Examiner II in December, 1985. Ms. Castle worked for Central Benefits through December, 1986. During the course of her one year at Central Benefits, she applied for a promotion seven times. Though she was considered for several of the promotions, in each case the promotion was given to another employee of Central Benefits. In December, 1986, Ms. Castle was terminated from her employ at Central Benefits.

Plaintiff alleges *inter alia*, that she was harassed, denied promotional opportunities, and discharged because of her race in violation of 42 U.S.C. § 1981. Plaintiff states that in denying her various promotions, defendants conspired and did intentionally discriminate against her. Accordingly, plaintiff also seeks redress under 42 U.S.C. §§ 1985 and 1986.

Defendant, Central Benefits, is an Ohio corporation which provides insurance to Blue Cross Health Care Plan subscribers. According to the complaint, defendants Gerald Morrow, Allen Heilman, Vicki Quraishi, Kathy Moore, Joyce Massie, Mary E. Johnson, and Dennis Kackley are supervisory personnel who were employed by Central Benefits during the time when Ms. Castle was also employed. According to the defendants, the Medical/Surgical Claims Department is composed of four different areas including Technical User Support, Prepayment Activities, Dental and Vision, and Claims Examining. The Claims Examining area was divided into two different units which were headed by a supervisor and a group leader. Plaintiff worked in Unit D of the Medical/Surgical Claims Examining Department. Defendants claim Ms. Castle remained in her Claims Examiner position until her discharge by supervisor Kathy Moore on December 10, 1986.

Defendants do not deny that during her employ at Central Benefits, plaintiff did apply for a number of promotions. However, defendants assert that pursuant to the company's policies and procedures, its promotional opportunities depend solely on ability, performance and contribution to the company's success. Accordingly, defendants assert that plaintiff was denied promotions because of her own inexperience and that in each case the position was filled by a more qualified applicant. Defendants assert that plaintiff was not discharged for any reason based on race or with discriminatory intent. Further, defendants assert that the promotions which plaintiff applied for were filled by both black and white applicants, solely on the basis of their individual qualifications.

In answer to plaintiff's discharge claim, defendants contend that Ms. Castle was discharged for valid reasons. Throughout plaintiff's employ, defendants assert that they maintained an attendance and punctuality policy which requires employees to "return promptly from breaks and lunch breaks and to continue working until their scheduled departure time." (Defendants' Memorandum in Support of Motion for Summary Judgment, p. 4). Defendants

have submitted evidence which shows Ms. Castle experienced numerous problems returning from breaks and lunch throughout the 1986 period. Thus, according to defendants, plaintiff's discharge was in part the result of a written warning for excessive tardiness given to her on November 17, 1986. Under defendants' policy, an employee under written warning may be terminated at her supervisor's discretion if during the warning period the employee obtains a Degree III violation. Defendants contend that Ms. Castle was guilty of a Degree III violation on December 4, 1986, when during a unit meeting she exhibited disrespect toward her unit supervisor by turning her back on the group and facing the door during the entire meeting. As a result of this violation, combined with the written warning of two weeks earlier, Ms. Castle was discharged.

Plaintiff answers that the real reason for her denial of promotional opportunities and discharge is that of racial discrimination by the defendants. Plaintiff argues first, that her qualifications exceed those of the employees chosen for the promotions, and second, that other employees also exhibited excessive tardiness but were not discharged.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) *citing Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the non-moving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *citing Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553, (*quoting* Fed.R.Civ.P. 1); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

I. Section 1981 denial of promotional opportunities claims.

Plaintiff brings this action pursuant to 42 U.S.C. § 1981, which states in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C.A. § 1981 (West 1981). In addressing a Section 1981 claim, the United States Supreme Court in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), clearly precluded any cause of action under Section 1981 for racial harassment in a hostile work environment. The Court stated: "We hold ... that racial harassment relating to conditions of employment is not actionable under Section 1981 because that provision does not apply to conduct which occurs after the formation of a contract...." *Id.* at ——, 109 S.Ct. at 2369. In discussing the petitioner's claim of racial harassment from her supervisor, the Court said:

This type of conduct, reprehensible though it be if true, is not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligation through legal process. Rather, such conduct is actionable under the more expansive reach of Title VII of the Civil Rights Act of 1964.

*Patterson,* 491 U.S. at ——, 109 S.Ct. at 2374.

In *Patterson,* the petitioner was a black woman employed by the respondent credit union as a teller and file coordinator for ten years until she was laid off. Thereafter, she brought an action in the district court under Section 1981 alleging that re-

spondent had harassed her, failed to promote her, and then discharged her, all because of race. The Court made it clear that racial harassment and attacking the conditions of her employment are subject to the Title VII prohibitions against discrimination.

■ Regarding promotions, the Court held that a promotion claim is actionable under Section 1981 if the nature of the change in position is such that it involves an opportunity to enter into a new contract with the employer. In the words of Justice Kennedy: "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* at ——, 109 S.Ct. at 2377. In this light, only when an employee can firmly establish that she was denied promotional opportunities which would bring her to new and distinct employer/employee relationship may she maintain a cause of action under Section 1981. The burden, therefore, is upon the plaintiff to establish that the promotional opportunities she applied for gave rise to a new and distinct relationship.

■ Applying this burden to a summary judgment, plaintiff's case must fail. Under *Celotex*, the movant bears the initial responsibility of identifying parts of the record that demonstrate the absence of issues of material fact. In this case, the burden is on the defendants to show "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Viewed through the evidentiary prism of *Patterson*, defendant needs merely to point out

that plaintiff has failed to establish a material element of her case. If, as defendants argue, there arises in this case no new and distinct relationship, then plaintiff has no cause of action under Section 1981. Accordingly, the onus is now upon plaintiff "to go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(e) imposes an affirmative burden on the non-movant to show the Court that facts exist to support her cause of action. This, plaintiff has failed to do.

The specific facts requirement of *Celotex* viewed through the evidentiary prism of *Patterson* requires plaintiff to prove an opportunity for a new and distinct relationship between employee and employer. *Cf. Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).[1] Plaintiff baldly asserts that when she applied for the promotions she was seeking to enter into a new contract in terms of responsibilities and pay with her employer. Whether this is true or not, and the Court does not believe that it is, plaintiff has not met her burden under *Patterson* and *Celotex*. The standard is plainly "specific facts." Yet, plaintiff has provided this Court with no specific facts to support the new and distinct relationship burden. Plaintiff's unsubstantiated assertion is not, under any standard, specific facts.[2]

Thus, though "[t]he evidence of a non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,"

1. *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), involves the refusal of a law firm to accept an otherwise qualified associate into partnership. There the Court took note that elevation to partnership entails a change of status from employee to employer. Though it is unclear whether this is the substantive burden the Court undertook to require after *Patterson*, it is, at minimum, an example of what type of change in status the Court had in mind when it decided *Patterson*. *See Patterson*, 491 U.S. 164, 109 S.Ct. at 2377.

2. Were plaintiff to have shown that the new positions resulted in change of status from non-exempt to exempt employee, or change in benefit classification for example, the Court would consider the claim. However, during the entire pendency of this action, plaintiff failed to provide the Court with any corroborating evidence to substantiate this vital element. *See, e.g., Luna v. City and County of Denver*, 718 F.Supp. 854 (D.Colo.1989), where the plaintiff provided the district court with a memorandum from the City of Denver to himself which showed that a promotion from Engineer I to Engineer II would exempt him from being required to use a time clock and disqualify him from overtime pay.

*Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513, the standard is "whether a fair-minded jury would return a verdict for the plaintiff on the evidence presented." *Id.* 477 U.S. at 252, 106 S.Ct. at 2512. The problem herein for the plaintiff is not whether her evidence is to believed, but that she has presented no evidence on this critical issue. A fair-minded jury could not return a verdict for the plaintiff on the basis of there being a new and distinct relationship between Ms. Castle and Central Benefits because other than plaintiff's unsubstantiated assertion, no evidence has been submitted as to that critical fact.[3] As stated in the Court's discussion of the *Standard of Review* applicable in the Sixth Circuit, "mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient." Accordingly, defendants' motion for summary judgment as to plaintiff's Section 1981 claim for denial of promotional opportunities is hereby GRANTED.

■ Even if plaintiff could survive the requirement that the alleged actions not be based on post-formation conduct under *Patterson,* plaintiff's claims must still fail. In order to prevail, a Section 1981 plaintiff must demonstrate that the defendants intentionally discriminated against her on the basis of race. *General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Memphis v. Greene,* 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63 (6th Cir.1985). This showing can be made either by direct or indirect proof of discriminatory intent. Under current

formulations "[d]irect evidence of discriminatory intent consists of actions or remarks by the defendant that reflect a discriminatory attitude." *Lynch v. Belden and Co., Inc.,* 882 F.2d 262, 269 (7th Cir.1989) (*citing Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). In the absence of direct proof, "[p]roof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

The Supreme Court has developed a framework of proof under Title VII for determining discriminatory motive by indirect proof. The well established formulation under Title VII requires that the plaintiff establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *prima facie* case requires the plaintiff to show by a preponderance of the evidence:

> (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Jackson v. KO Bottlers,* 743 F.2d 370, 375 (6th Cir.1984).

> See also *Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989). In *Williams* the district court concluded that:
>> [T]he concept of a "new and distinct relation" [under *Patterson* ] certainly does not include a situation in which the employment relationship would not be altered in any way except for a change in pay. Higher pay is a part of nearly all promotions and by itself can hardly make a promotion a "new and distinct relation."
> *Williams,* 716 F.Supp. at 51.

---

**3.** *Greggs v. Hillman Distributing Co.,* 719 F.Supp. 552 (S.D.Tex.1989), is in accord. In *Greggs,* the plaintiff alleged that the defendant, in violation of Section 1981, refused to promote him due to his race. When the defendant moved to dismiss based on *Patterson,* the plaintiff argued that a promotion from sales supervisor to area supervisor did, indeed, constitute a new and distinct relationship with his employer. However, as here, plaintiff offered into evidence no facts to support this allegation. Accordingly, the district court refused to accept as true "bald, conclusory allegations which are factually unsupported," and dismissed the case. *Greggs,* 719 F.Supp. at 555.

■ In *Patterson*, the Court held that the substantive burden of proof in a Section 1981 claim based on indirect proof is the same burden developed in Title VII case. *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2377. Accordingly, this Court must apply the *McDonnell Douglas—Burdine* standard as to these facts. *See also Jackson, supra* 743 F.2d at 378. With due regard to plaintiff's assertions to the contrary, the Court fails to see that she has met the second burden; i.e., that Ms. Castle was qualified for the positions to which she applied.

The positions Ms. Castle applied for were all supervisory in nature.[4] At a minimum, these promotions required one year practical experience in the health insurance field; and at least three of the five required two years of experience.[5] Notwithstanding these prerequisites, plaintiff asserts that she was qualified for these positions as early as one month after her commencement of employment with Central Benefits, and throughout the year in which she was employed. Further, plaintiff asserts that "defendants knew or should have known that [she] had extensive claims processing experience in her prior employment." (Plaintiff's Motion Contra, p. 7).

■ The Court is hardpressed to attach significance to this statement in light of its lack of support. If it is indeed true that she does have prior claims experience, there is no evidence in the record that plaintiff ever made the defendants aware of her prior claims experience. Ms. Castle's Application for Employment shows that she worked at Mercy Hospital for four and one-half years as a Licensed Practical Nurse. Under the "Brief description of Duties" category she writes: "See Resume All nursing procedures." (Defendant's Reply Memorandum, Attachment A). Likewise, she lists Mt. Carmel Medical Center and St. Anthony's Hospital; March 1977 to December 1978, and February 1975 to September 1976, respectively; Licensed Practical Nurse; "See Resume All nursing procedures." *Id.* The two page attached resume contains substantially the same information.[6] Assuming that plaintiff's "knew or should have known" claim is based on this information, then her argument falls far short of the quantum of evidence demanded under *Anderson.* Even though the non-moving party is entitled to all reasonable inferences that may be drawn in her favor, *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2511, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970), she may not merely rely upon the allegations in her complaint, nor upon conclusory allegations of discrimination.[7]

4. Ms. Castle applied for five positions, two of them twice. They are: Supervisor Medical/Surgical Health Claims, User Analyst Medical/Surgical Health Claims (2X), Medical/Surgical Group Leader (2X), Business Office Supervisor, and Medical/Surgical Prepayment Activities Group Leader.

5. Defendants have submitted the memorandum issued to make current employees aware of openings within the company. These memorandum list the prerequisites applicable to each position. The User/Analyst and Group Leader positions require two years of practical experience in the health care benefits field as a prerequisite; the Group Leader of Prepayment Activities requires one year experience; the Business Office Supervisor has a prerequisite of two years in a medical or hospital business office; and the Medical/Surgical Supervisor prerequisite stands at two years in the health benefits field.

6. Page one of Janice Castle's resume lists her biographical information and previous employers names and addresses. The second page begins with the heading "SUMMARY OF WORK EXPERIENCE" and lists the following under "Duties included:

 1. Contacting patients and family by phone to make admission arrangements.
 2. Verifying insurance coverage.
 3. Obtaining medical history and other pertinent facts about the patient.
 4. Documentation of events.
 5. Contacting physicians regarding orders.
 6. Various other nursing procedures."
 (Defendant's Reply Memorandum, Attachment A).

7. *Summers v. Allis Chalmers,* 568 F.Supp. 33 (N.D.Ill.1983), is in accord. In *Summers,* the plaintiff alleged that her employer's refusal to promote her to Supervisor of Union Relations from her current position as Personnel Supervisor was based on discriminatory intent. The position description for this job specified, among other things, that desirable prior experience would include 2–4 years labor background, which the plaintiff admittedly did not have. The court noted that the resume of the person

However, even were the Court to somehow find this record supports plaintiff's claim, defendants counter with the valid argument that plaintiff failed to inform defendants of her prior experience during her performance appraisals. When Ms. Castle received her sixth month review, Supervisor Kathy Moore specifically noted under the "job knowledge" category that "Janice is doing very good considering she had no previous claims experience." (Defendant's Reply Memorandum Exhibit B). Plaintiff made no rebuttal to this entry. In fact, she signed the appraisal indicating her approval of the contents. Under the summary judgment standard discussed above, plaintiff's burden is to establish "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Again, plaintiff has failed to meet this burden.

According to *Anderson*, plaintiff's burden is to persuade the Court that a fair minded jury could return a verdict for her. 477 U.S. at 249, 106 S.Ct. at 2511. In fact, the record leads to the opposite conclusion. Ms. Castle's six month review contains a space for her comments as to the review. Specifically, ¶ 2 asks for the "[e]mployee's comments regarding areas needing improvement." (Defendant's Reply Memorandum, Attachment A). To which Ms. Castle responds: "Enroll in courses that will help me understand the insurance industry." *Id.* Contrary to plaintiff's assertions that she is an experienced health care benefits worker; the record reflects that she is new in this field. From the evidence before the Court in the form of depositions

and documentary evidence, and specifically the absence of evidence supporting plaintiff's position, the Court believes that though she may have been an experienced health care worker, Ms. Castle was a novice in the health care benefits field.[8] Accordingly, defendants' motion for summary judgment as to plaintiff's Section 1981 claim for denial of promotional opportunities is GRANTED in the alternative, on the basis that plaintiff has failed to prove a *prima facie* case under *Burdine* and *McDonnell Douglas.*

II. Section 1981 wrongful discharge claims.

 As stated earlier in this Opinion, under the Supreme Court's strict construction of 42 U.S.C. § 1981 in *Patterson*, a cause of action under Section 1981 is available to a plaintiff only when supported by allegations of disparate treatment in the formation and enforcement of contracts. *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2372–73. It is clear that under this analysis, wrongful discharge claims must be brought under the more expansive provisions of Title VII and not Section 1981. *Hall v. County of Cook, State of Ill.*, 719 F.Supp. 721 (N.D.Ill.1989). The Supreme Court has expressly provided that extending the scope of Section 1981 to include post-formation conduct unrelated to the employee's right to make and enforce contracts would "undermine the detailed and well-crafted procedures for conciliation and resolution of Title claims." *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2374. According

---

hired for the Supervisor of Union Relations position revealed that he was unquestionably qualified for the position. Accordingly, the court granted the defendant's motion for summary judgment as to the plaintiff's Title VII and Section 1981 claims on the basis that she failed to demonstrate a *prima facie* case under the *McDonnell Douglas* test. Specifically, because the plaintiff had failed to satisfy the requirements for the position she sought, the court found that she had "failed to raise any genuine issue of material fact as to this crucial element [that she was qualified for the position] of her case."

**8.** Even Ms. Castle's own deposition supports the Court in this conclusion. In answer to a direct

question asking how much experience she had in the insurance field when she applied for her first promotion, Ms. Castle responded: "That was it." To which the questioner asked: "Three or four weeks?" and Ms. Castle answered: "Yeah." The significance of this exchange cannot be understated. It is apparent that the extensive experience Ms. Castle claims to have had at the time she applied for promotional opportunities at Central Benefits consists merely of her time at Central Benefits. Clearly, Central Benefits was in the best position to evaluate Ms. Castle's potential under such circumstances and the Court will not substitute its own judgment for that of the employer.

to the Court in *Patterson,* a cause of action which involves allegations of post-formation racial discrimination is to brought under the more elaborate procedure of 42 U.S.C. § 2000e–5(b) and through the administrative channels of the EEOC which are designed to assist in the investigation of claims of racial discrimination in the workplace. *Id.* at ——, 109 S.Ct. at 2375. With the above in mind, this Court must DISMISS plaintiff's claim of wrongful discharge brought under 42 U.S.C. § 1981 *sua sponte* under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted.

### III. Section 1985 conspiracy claims.

Plaintiff claims that her supervisor conspired with the other named defendants in order to terminate her for discriminatory reasons. Plaintiff claims that the assertions by the defendants that she was disrespectful towards her supervisor during a formal department meeting are pretextual. In support of this argument plaintiff asserts that her supervisor acted outside of the scope of her employment in terminating plaintiff. Regardless of the veracity of plaintiff's well-made argument, the Court must dismiss plaintiff's Section 1985 claim for failure to state a claim for which relief may be granted.

■■■ 42 U.S.C. § 1985 provides a cause of action for civil conspiracies and may be asserted against private parties.[9] However, only certain privileges and immunities of citizenship are protected against private action. In *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court held that Section 1985(3) is not available as an alternative means of redressing violations of Title VII. After discussing Congress' comprehensive plan through which allegations of employment discrimination must be brought under Title VII, the Court stated:

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law..... The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Novotny,* 442 U.S. at 375–76, 99 S.Ct. at 2350–51 (footnotes omitted). According to the Court: "Section 1985(3), ..., *creates* no rights." *Id.* (emphasis in the original). Section 1985(3) is a purely remedial statute which provides a cause of action for some other established federal right when it is breached by a conspiracy in a manner defined by the section. *Id.* Accordingly, since, as discussed above, plaintiff's case actually lies in Title VII, plaintiff has no cause of action under Section 1985.

■■■ Alternatively, Section 1985 could provide relief for plaintiff as a remedy for conspiracy as it relates to interference with her contractual rights as an employee. *See, e.g., Griggs v. National R.R. Passenger Corp., Inc.,* 900 F.2d 74 (6th Cir.1990). However, as discussed above, this Court finds that plaintiff's complaint arises out of post formation activity. *Patterson,* 491 U.S. 164, 109 S.Ct. 2363. Thus, plaintiff has no Section 1985 cause of action under the federal right to contract statute, 42 U.S.C. § 1981. Insofar as the allegations in the complaint are practices prohibited by Title VII, from which there arises no cause of action under Section 1985, the Court must conclude that plaintiff has not estab-

9. As 42 U.S.C. § 1985(1) applies to state actors and Section 1985(2) applies to obstruction of justice, the Court will consider plaintiff's conspiracy complaint under Section 1985(3), which applies to deprivations of rights and privileges. Section 1985(3) states in pertinent part:

(3) If two or more persons in any State of Territory conspire ..., for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; ... whereby another is injured in his person or his property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

lished a Section 1985 claim. Accordingly, the Court DISMISSES plaintiff's claim under 42 U.S.C. § 1985(3) for failure to state a claim for which relief may be granted under Fed.R.Civ.Pro. 12(b)(6).

## IV. Section 1986 claim for negligence.

 Given that plaintiff has failed to state a claim upon which relief may be granted under Section 1985, plaintiff's Section 1986 claim must also fail. It is now well settled in at least two of the Circuits that a Section 1986 cause of action for neglect to prevent conspiracy to interfere with civil rights depends upon the existence of a colorable claim of conspiracy under Section 1985. *Grimes v. Smith,* 776 F.2d 1359 (7th Cir.1985); *Trerice v. Pederson,* 769 F.2d 1398 (9th Cir.1985); *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474 (7th Cir.1985); *Mollnow v. Carlton,* 716 F.2d 627 (9th Cir.1983), *cert. denied* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126, *rehearing denied* 466 U.S. 954, 104 S.Ct. 2162, 80 L.Ed.2d 547 (1984). Though the Sixth Circuit has not, as of yet, decided this question at the appellate level, the district courts in Ohio uniformly agree that a Section 1986 claim is premised on a violation of Section 1985. *Boddie v. American Broadcasting Companies, Inc.,* 694 F.Supp. 1304 (N.D.Ohio 1988); *Givan v. Greyhound Lines, Inc.,* 616 F.Supp. 1223 (S.D.Ohio 1985); *Buchanan v. Sowa,* 592 F.Supp. 1009 (D.C.Ohio 1984). Inasmuch as this Court sees no reason to break from this reasoning, plaintiff's 42 U.S.C. § 1986 action for neglect to prevent conspiracy to interfere with civil rights is DISMISSED for failure to state a claim upon which relief can be granted.

## V. Section 1988 claim for attorney's fees.

42 U.S.C. § 1988 states that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . ., the court, in its discretion, may allow the prevailing party, . . ., a reasonable attorney's fee as part of the costs."

The test as to whether the plaintiff is a "prevailing party" under Section 1988 is as stated in *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989):

> We think the language of *Nadeau v. Helgemoe* [581 F.2d 275 (1st Cir.1978)], . . ., adequately captures the inquiry which should be made in determining whether a civil rights plaintiff is a prevailing party within the meaning of § 1988. If the plaintiff has succeeded on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit" the plaintiff has crossed the threshold to fee award. *Nadeau,* 581 F.2d, at 278–279. The floor in this regard is provided by our decision in *Hewitt v. Helms,* 482 U.S. 755 [107 S.Ct. 2672, 96 L.Ed.2d 654] (1987). As we noted there, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 760 [107 S.Ct. at 2675]. Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988 the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. *Id.,* at 760–761, [107 S.Ct. at 2675–2676].

489 U.S. at ——, 109 S.Ct. at 1493, 103 L.Ed.2d at 877; *Higgs v. Bland,* 888 F.2d 443, 450 (6th Cir.1989). As plaintiff has clearly not succeeded on any significant issue on the merits of this case; under this standard, she is not entitled to attorney's fees as a prevailing party under Section 1988. Accordingly, plaintiff's action under 42 U.S.C. § 1988 is DISMISSED.

## VI. Conclusion.

In summary, defendants' motion for summary judgment pursuant to Rule 56 Fed.R.Civ.Pro. is GRANTED as to all allegations by the plaintiff. Whereupon, upon consideration and being duly advised plaintiff's complaint is hereby DISMISSED with prejudice.

IT IS SO ORDERED.